Below is an Opinion of the Court.

*Trish M Brown*
TRISH M. BROWN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Bankruptcy Case |
| | ) | No. 10-37631-tmb7 |
| CLAY WILLARD BRION, III | ) | |
| | ) | |
| _____Debtor._____ | ) | |
| | ) | |
| DANIEL RICHARD HIGGINS, | ) | |
| | ) | Bankruptcy Case |
| _____Debtor._____ | ) | No. 10-37632-rld7 |
| | ) | |
| CLYDE BERGEMANN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding |
| | ) | No. 10-3281-tmb |
| v. | ) | |
| | ) | |
| CLAY WILLARD BRION, III and | ) | |
| DANIEL RICHARD HIGGINS, | ) | |
| | ) | |
| _____Defendants._____ | ) | |
| CLYDE BERGEMANN, INC., | ) | Adversary Proceeding |
| | ) | No. 10-3282-tmb |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DANIEL RICHARD HIGGINS, | ) | |
| | ) | |
| _____Defendant._____ | ) | |

///

MEMORANDUM OPINION-1

This matter comes before the court on the Parties' cross motions for summary judgment. Plaintiff was represented by David W. Hercher. Defendants were represented by S. Ward Greene.

PROCEDURAL BACKGROUND

Defendants Clay Brion III and Daniel Higgins (Defendants) filed Chapter 7 petitions on August 10, 2010. On September 30, 2010, Plaintiff Clyde Bergemann, Inc., dba Anthony-Ross Company ("ARC") filed separate adversary proceedings on identical theories based on common facts against each Defendant seeking a determination that damages awarded in a prior arbitration were excepted from discharge under 11 U.S.C. § 523[1] (First Claim for Relief). ARC also sought a declaratory judgment that injunctive relief awarded in the arbitration could not be discharged (Second Claim for Relief). Defendants answered denying the material allegations and asserting six affirmative defenses each.

Plaintiff moved for summary judgment in each adversary. The adversaries were consolidated for all purposes by amended order entered December 10, 2010. Defendants opposed Plaintiff's motions and cross-moved for summary judgment. Plaintiff in turn opposed the cross-motions and objected to Defendants' declarations tendered in opposition to its motions.

After oral argument on March 9, 2011, I ruled on a portion of the evidentiary objections. I then took the motions and the remaining evidentiary objections under advisement. At the parties' request, I delayed my decision on the motions pending a settlement conference. That conference was unsuccessful. The motions were put back on the docket and are now ripe for decision.

A similar non-dischargeability action was filed against a third defendant, Eugene Sullivan ("Sullivan"), in the United States Bankruptcy Court for the Southern District of Alabama, Case No. 10-04384-WSS, Adv. Proc. No. 10-00094. On May 20, 2011, the Honorable William S. Shulman ruled on ARC's motion for summary judgment and Sullivan's cross motion for summary judgment in favor of ARC (Order on Cross-Mot. for Summ. J., Doc. 55).

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure ("FRBP"), Rules 1001-9037.

MEMORANDUM OPINION-2

In reaching my decision, I have carefully reviewed the motions, documents in support thereof and opposition thereto, the pleadings, and other submissions in the file. I also have read applicable legal authorities, both as cited to me and as located through my own research. I have considered carefully the oral arguments presented and have read counsels' submissions in detail. The following findings of fact and legal conclusions constitute the court's findings under Federal Rule of Civil Procedure ("FRCP") 52(a), applicable in this proceeding under FRBP 7052. To the extent any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

FACTS

Judge Shulman's Findings of Fact in his Order on Cross Motions for Summary Judgment are incorporated herein. A copy of his opinion is attached to this Memorandum Opinion.

I supplement the Findings of Fact as follows:

The references to Sullivan in the first full paragraph on page 2 of Judge Shulman's Order include references to the present Defendants Brion and Higgins.

The Arbitration Award against Clay Brion III was $131,891.89 and the Award against Daniel Higgins was $142,426.34.

LEGAL ANALYSIS

1. <u>Summary Judgment Standards</u>

On a motion for summary judgment, the moving party has the burden to show there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. FRCP 56(a) (made applicable by FRBP 7056). Material facts are such facts as may affect the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>FreecycleSunnyvale v. Freecycle Network</u>, 626 F.3d 509, 514 (9th Cir. 2010) (quoting <u>Anderson</u>, 477 U.S. at 248.

With regard to its own claims or defenses, (i.e. those elements for which the moving party bears the burden of proof at trial), the movant must support its motion with evidence that would entitle it to a directed

MEMORANDUM OPINION-3

verdict if not controverted at trial.  <u>C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000).  If the movant makes the requisite affirmative showing, the non-movant may not simply rely on allegations and denials in its own pleadings.  FRCP 56(c).  Instead, the non-moving party must produce significant probative evidence (or point to such evidence already before the court), showing specific facts which demonstrate the existence of a genuine issue for trial. <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991) (internal citation omitted).

All reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party.  <u>Crosswhite v. Jumpking, Inc.</u>, 411 F.Supp.2d 1228, 1230 (D. Or. 2006) and all rational or reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  <u>T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

2.  <u>Claim for Declaratory Judgment</u>

Plaintiff's Second Claim for Relief seeks a declaration that it may enforce the injunctive relief specified in the Judgment entered on August 11, 2010, in the United States District Court for the District of Oregon ("Judgment") after Defendants' general discharges in these cases.  Defendants conceded this issue.  Plaintiff is thus entitled to summary judgment declaring that its right to enforce the injunction, including the right to seek monetary sanctions based on post-petition breach thereof, against both Defendants is not a claim subject to discharge.

3.  <u>Issue Preclusion</u>

In their motions and cross motions on the § 523(a) claims both parties contend that the elements necessary to grant summary judgment in their favor were conclusively established in the underlying litigation.

Issue preclusion, sometimes referred to as collateral estoppel, is a viable tool in § 523 litigation.  <u>Grogan v. Garner</u>, 498 U.S. 279 (1991). Because the Judgment was entered in federal court, the federal law

MEMORANDUM OPINION-4

of issue preclusion controls. <u>McQuillion v. Schwarzennegger</u>, 369 F.3d 1091, 1096 (9th Cir. 2004). Although the federal elements of issue preclusion have been stated various ways, the Bankruptcy Appellate Panel for the Ninth Circuit succinctly boiled them down to the following:

> 1) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding;
>
> 2) The issue must have been actually litigated in the former proceeding;
>
> 3) It must have been necessarily decided in the former proceeding;
>
> 4) The decision in the former proceeding must be final and on the merits; and
>
> 5) The party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

<u>Kelly v. Okoye (In re Kelly)</u>, 182 B.R. 255, 258 (9th Cir. BAP 1995). Arbitrations can meet this criteria. Because they provide "an opportunity for presentation of evidence, the determination of issues in an arbitration proceeding should generally be treated as conclusive in subsequent proceedings, just as determinations of a court would be treated." <u>Greenblatt v. Drexel Burnham Lambert, Inc.</u>, 763 F.2d 1352, 1360 (11th Cir. 1985) (citing Restatement (Second) of Judgments § 84(3) and comment c (1982)).

"The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." <u>Clark v. Bear Sterns & Co., Inc.</u>, 966 F.2d 1318, 1321 (9th Cir. 1992). "Any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing the collateral estoppel effect." <u>Kelly</u>, 182 B.R. at 258 (citations omitted).

There is no dispute the Judgment is final and on the merits and the same parties are involved. The issue, therefore, is whether the identical issues raised in Plaintiff's § 523(a) claims were actually litigated and "necessarily decided" in the arbitration.

4. <u>Plaintiff's Claims of Non-Dischargeability</u>

Plaintiff seeks to except the Judgment from discharge under §§ 523(a)(4) and (6).

MEMORANDUM OPINION-5

"A primary objective of the Bankruptcy Code is to provide a fresh start for debtors overburdened by debts they cannot pay. Accordingly, I start from the proposition that the discharge exception provisions of the Bankruptcy Code are interpreted narrowly in favor of debtors.

The party seeking to except its claim from the debtor's discharge bears the burden of proof to establish that its claim is nondischargeable . . . the burden of proof standard for actions to except a creditor's claim from the debtor's discharge is preponderance of the evidence. In other words, in spite of the Bankruptcy Code's policy bias in favor of the debtor's discharge, a party seeking to except an obligation from discharge under § 523(a) will prevail if the evidence establishes that it is more likely than not that the creditor's cause of action is justified."

Vans Inc. v. Rosendahl (In re Rosendahl), 307 B.R. 199, 214 (Bankr. D. Or. 2004) (citations omitted).

    a.  Plaintiff's Claims Under Section 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."

"The malicious injury requirement is separate from the willful injury requirement. A 'willful' injury is a 'deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.' A 'malicious' injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."

Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (citations omitted) (emphasis in original); see also Ormsby v. First American Title Co. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).

    (1)  Was there Sufficient Evidence to Establish Willfulness?

In order to meet the "willful" prong, the court must find a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998) (emphasis in original). Debts or losses that arise from injury inflicted recklessly or negligently do not give rise to liability. Id. A debtor must have a subjective motive to inflict injury or believe that injury is substantially certain to result from his own conduct. Ormsby, 591 F.3d at 1206. It is not sufficient that viewed objectively, there was a substantial certainty that the debtor's conduct would cause harm. Carrillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002). In making a § 523(a)(6) determination, the debtor is charged with the natural consequences of his actions. Ormsby, 591 F.3d at 1206.

MEMORANDUM OPINION-6

To establish willfulness, Plaintiff relies mainly on case law supporting the doctrine of "categorical harm." That is, if a defendant intentionally engages in certain wrongful conduct, intent to harm the object of such conduct is necessarily implied. See Smith v. Entrepreneur Media, Inc. (In re Smith), 2009 WL 6058677, *9-10 (9th Cir. BAP 2009)[2] (intentional infringement of trademark under federal law was categorically harmful); Star's Edge Inc. v. Braun (In re Braun), 327 B.R. 447, 450-51 (Bankr. N.D. Cal. 2005) (intentional infringement of federal copyright laws was categorically harmful).

In Braun, the court explained the doctrine as follows:

> "*Geiger* holds that a debt attributable to an injury that results from recklessness or negligence is dischargeable even if the act that caused the injury was performed intentionally. *Su* holds that the court must apply either a subjective test when determining whether an act was performed with the intent to injure, or determine with substantial certainty that injury would occur. *Geiger* and *Su* both involve conduct that can result in more than one outcome. *Geiger* determines the dischargeability of a debt incurred in a medical malpractice judgment while *Su* involves a debt for a personal injury resulting from an auto accident. Performing a medical procedure and driving an automobile are activities that can be executed intentionally, but in a manner that is reckless or negligent with regard to the outcome. On the other hand, activities such as filing a frivolous lawsuit (as the debtor did in *Zelis* ) or infringing a copyright (as Debtor did here) do not have uncertain or variable outcomes. While a medical procedure can result in either healing or harm, and a physician may cause harm by negligence, copyright infringement is a categorically harmful activity. One cannot commit intentional copyright infringement and, through his negligence, cause financial harm to the copyright holder. Rather, harm necessarily follows from the act of infringing regardless of the infringer's state of mind when creating the infringing material."

Id. at 450-51.

The arbitrator found for Plaintiff on its claims for interference with contract and interference with economic advantage as well as its claims for breach of fiduciary duty and misappropriation of trade secrets. A person cannot interfere with a contract or a prospective economic advantage without causing harm to the party against whom he interferes. Likewise, one cannot intentionally breach a fiduciary duty by usurping a corporate opportunity (here, the Jambi contract), without by necessity harming the corporation. See, e.g.,

---

[2] Although Smith has been designated as "Not for Publication," it may be cited for its persuasive value. FRAP 32.1

MEMORANDUM OPINION-7

<u>Digital Commerce Ltd. v. Sullivan (In re Sullivan)</u>, 305 B.R. 809, 822-23 (Bankr. W.D. Mich. 2004)

(usurping a corporate opportunity, even if the specific motivation was not to harm the corporation, is a "zero-

sum game" that is, the usurper can only gain if the corporation loses.)  Accordingly, by finding for Plaintiff on

the intentional interference and breach of fiduciary duty issues, the arbitrator necessarily decided that

Defendants acted willfully.

             (2)  <u>Was there Sufficient Evidence to Establish Malice</u>?

     Section 523(a)(6) also requires a finding of "malice."  Malice under § 523(a)(6) does not equate to

"biblical malice," that is personal hatred, spite or ill will.  <u>Thiara v. Spycher Brothers (In re Thiara)</u>, 285 B.R.

420, 434, n.15 (9th Cir. BAP 2002).  "Malice may be inferred based on the nature of the wrongful act."

<u>Ormsby</u>, 591 F.3d  at 1207, if it is first established the tortious conduct was willful.  <u>Id.</u>

        Plaintiff contends that the first three elements required for a finding of "malice," i.e. a wrongful act

done intentionally which necessarily causes harm, are met by the finding that the Defendants intended to

injure Plaintiff.  I agree.  Accordingly, I must determine whether the Defendants acted without just cause or

excuse.  Defendants argue that their motives were not to harm Plaintiff.  However, even an arguably benign

motive does not justify or excuse behavior that is otherwise wrongful.  <u>Murray v. Bammer (In re Bammer)</u>

131 F.3d 788, 793 (9th Cir. 1997), <u>abrogated in part on other grounds by</u>, <u>Kawaauhau v. Geiger</u>, 523 U.S. 57

(1998).  The arbitrator found that Defendants "were motivated to a large degree by personality and business

differences" with Plaintiff's CEO.  However, the arbitrator also recognized that the personality differences

were not an excuse for the Defendants' conduct. Further, he overruled all of the Defendants' affirmative

defenses.  In interfering with Plaintiff's contractual and prospective business relationships and in breaching

their fiduciary duties as discussed above, Defendants acted without just cause or excuse.  Accordingly, I find

that they acted with the requisite "malice" required to support a finding of nondischargeabilty under

§ 523(a)(6).

MEMORANDUM OPINION-8

Defendants argue that the Judgment is preclusive in their favor on the issue of malice because the arbitrator refused to award punitive damages against the Defendants. However, I do not find that fact determinative on the issue of whether Defendants acted with "malice" within the meaning of § 523(a)(6).

Under Oregon law, punitive damages <u>may</u> be awarded if the defendant "acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1). An award of punitive damages under Oregon law is discretionary. "[T]he jury has entire discretion to refrain from giving any punitive damages at all even though all the elements of malicious and damaging misconduct may have been established." <u>Van Lom v. Schneiderman</u>, 187 Or. 89, 108 (1949), <u>abrogated on other grounds</u>, <u>Oberg v. Honda Motor Co., Ltd.</u>, 320 Or. 544, 548 (1995) (citations omitted). Further, the standards of proof under Oregon law and § 523 are different. Oregon law requires "clear and convincing" evidence to award punitive damages, ORS 31.730(1), while § 523(a)(6) requires merely a preponderance to find "malice." <u>Grogan</u>, 498 U.S. at 291. When the standard of proof for the judgment sought to be used as preclusive based on a party's failure to meet that standard, is higher than the standard in the case in which preclusion is sought, the former judgment has no preclusive effect. <u>Clark</u>, 966 F.2d at 1322. Accordingly, the fact that the arbitrator declined to award punitive damages does not mean that he found that Defendants acted without malice.

### (3) Did the Damages Result from Defendants' Conduct?

Defendants contend that regardless of whether the court finds that they acted willfully and maliciously the debts they owe to Plaintiff are nonetheless dischargeable because they are not damages suffered by Plaintiff as a result of Defendants' conduct. I disagree.

The arbitrator awarded judgment in favor of Plaintiff equal to one half of the salary paid to each Defendant while the Defendant was actively engaged in competing with Plaintiff. Those damages create a "debt" as defined by § 101(12). In turn, § 523 excepts from discharge "debts for" various proscribed conduct. That phrase means that the "debt" must only be "the result of," "with respect to" or "by reason of" the proscribed conduct. <u>Cohen v. de la Cruz</u>, 523 U.S. 213, 220 (1998). Here, the disgorgement damages

MEMORANDUM OPINION-9

meet that test.  As stated in <u>Smith</u>, 2010 WL 6058677, *11:  "[A]ny liability duly imposed as a direct, but-for result of the defendant's nondischargeable conduct constitutes a nondischargeable debt, regardless of whether the liability reflects the actual damages incurred by the plaintiff."  <u>See also</u>, <u>Spring Works, Inc. v. Sarff (In re Sarff)</u>, 242 B.R. 620, 628 (6th Cir. BAP 2000) (disgorgement of compensation for breach of fiduciary duty sufficiently tied to willful and malicious conduct to constitute injury or damages).

5.  <u>Defendants' Affirmative Defenses</u>.

Defendants have alleged six affirmative defenses.  The first, failure to state a claim is without merit. The second, third, and fourth allege respectively that the arbitrator disregarded the law, abused his authority, and refused to hear evidence.  These affirmative defenses are attempted collateral attacks on the merits of the Judgment and are barred by the doctrine of res judicata.  <u>Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.</u>, 268 F.3d 1133, 1136 (9th Cir. 2001) ("'[A] judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected *only by a direct review* and not by bringing another action upon the same cause.") (quoting <u>Federated Dep't Stores, Inc. v. Moitie</u>, 542 U.S. 394, 398 (1981) (emphasis in original).

In their fifth affirmative defense, Defendants argue that the arbitrator's refusal to make a finding that his award would be nondischargeable in bankruptcy preclusively establishes that the award is dischargeable. (Defs' Answer at 4).  The arbitrator, however, made clear he would not rule on the dischargeability issue because that issue was not before him. Accordingly, the arbitrator's refusal to make a determination of dischargeability has no bearing on whether the Judgment is, in fact, dischargeable.

For their last affirmative defense, Defendants allege that a finding of nondischargeabilty is inappropriate because Plaintiff acted with unclean hands.  Specifically, they allege: "Plaintiff has no interest or need to collect money from defendants, but instead is attempting to eliminate competition and restrain defendants from continuing to develop new and improved equipment and processes for application in the pulp & [sic] paper industry."  (Def's Answer at 5).

MEMORANDUM OPINION-10

Courts have recognized "unclean hands" as a defense to § 523 actions. See, e.g., OSB Manufacturing, Inc. v. Hathaway, II (In re Hathaway, II), 364 B.R. 220 (Bankr. E.D. Va. 2007); Hooper v. Everett (In re Everett), 364 B.R. 711 (Bankr. D. Az. 2007). However, "[i]t is fundamental to [the] operation of the doctrine that the alleged misconduct by the [party] relate directly to the transaction concerning which the complaint is made. [U]nclean hands does not constitute misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc. 621 F.3d 981, 986-87 (9th Cir. 2010) (internal quotation omitted) (citations omitted).

> "Case law requires that in order to invoke the affirmative defense of unclean hands, there must be a specific nexus between the alleged misconduct of the moving party and the transaction of which he is complaining . . . . [While t]he moving party's hands must be clean with respect to the specific transaction to which he seeks relief [, h]e is not required to come to court with generally clean hands."

Hathaway, 364 B.R. at 243-44.

Here, Plaintiff's alleged misconduct arose after the transaction of which it is complaining and has no specific nexus to that transaction. Accordingly, Defendants' unclean hands defense has no merit.

Based on the foregoing, I grant Plaintiff's motion for summary judgment as to dischargeability under § 523(a)(6) on the basis of collateral estoppel and having found that Plaintiff's claim is nondischargeable under § 523(a)(6), its claim for nondischargeability under § 523(a)(4) is moot.

EVIDENTIARY ISSUES

In opposition to Plaintiff's motion, Defendants have proffered four declarations, one from each of the Defendants, one from Sullivan, and one from Todd Hill, a former employee of Plaintiff. To summarize, they basically profess Defendants' innocence of wrongdoing, especially any intent to harm Plaintiff. Also included are statements supporting the unclean hands affirmative defense. Because, as discussed above, I find the Judgment preclusive on the § 523(a)(6) claim, consideration of the statements in the declarations as to matters relating thereto is precluded, and as such, Plaintiff's objections are sustained.

MEMORANDUM OPINION-11

CONCLUSION

Plaintiff's motion for summary judgment on its claim for declaratory relief and its claim for a determination of nondischargeabilty under § 523(a)(6) will be granted and judgment in Plaintiff's favor will be entered.  Defendants' cross motions will be denied.

Plaintiff's counsel is to prepare the appropriate order and judgment, which should be lodged within ten (10) days of entry of this opinion.

### 

cc:    David W. Hercher
       S. Ward Greene

MEMORANDUM OPINION-12

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

EUGENE SULLIVAN,                                    CASE NO. 10-04384-WSS

      Debtor.                                        Chapter 7

———————————————————————

CLYDE BERGEMANN, INC.,
d/b/a ANTHONY-ROSS COMPANY,

      Plaintiff,

v.                                                 ADV. PROC. NO. 10-00094

EUGENE SULLIVAN,

      Defendant.

## <u>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

David W. Hercher, Counsel for the Plaintiff
Matthew C. McDonald, Counsel for the Plaintiff
S. Ward Greene, Counsel for the Defendant
Terrie S. Owens, Counsel for the Defendant

This matter is before the Court on the Plaintiff's motion for summary judgment and the

Defendant's motion for summary judgment.  The Court has jurisdiction to hear this matter

pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court.  After

due consideration of the pleadings and arguments of counsel, the Court makes the following

findings of fact and conclusions of law:

### FINDINGS OF FACT

The Plaintiff, Clyde Bergeman, Inc. d/b/a Anthony-Ross Company ("ARC"), is a

company in the business of modifying and improving its clients' industrial boilers.  The

1

Defendant, Eugene Sullivan, is a former employee of ARC. On February 8, 2008, ARC filed an action against Sullivan, two other former employees, Clay William Brion, III, and Daniel Richard Higgins, and their company, Sullivan, Higgins & Brion, PPE LLC ("SHB"), in the U.S. District Court in Oregon. The District Court granted the Defendants' motion to arbitrate the claims against them, and ARC filed an arbitration demand with the American Arbitration Association in May 2008. Richard Spier of Portland, Oregon was appointed as arbitrator.

The main contention of ARC's complaint was that Sullivan, Higgins and Brion formed and operated SHB to compete for business with ARC, such as the Jambi bark boiler project in Indonesia, while they were still employed with ARC. ARC also alleged that the three employees used ARC's confidential and proprietary information, specifically the Lotus Notes database and the Master Proposal List, and kept copies of the information after they left ARC. Sullivan denied the allegations, and asserted that ARC had previously disclosed or not properly protected the alleged proprietary information. Further, Sullivan stated that SHB did not compete for business with ARC because ARC was only interested in projects within the United States, and the Jambi bark boiler project was not a project that ARC would have pursued. Finally, Sullivan maintained that the members of SHB worked diligently for ARC during their employment and took no action to harm ARC's business.

ARC's amended arbitration complaint contained the following claims for relief: (1) breach of contract; (2) breach of fiduciary duty/duty of loyalty; (3) misappropriation of trade secrets-Oregon Trade Secrets Act, ORS 646.461 et seq.; (4) Computer Fraud and Abuse Act, 18 U.S.C. §1030; (5) injunctive relief; (6) unjust enrichment; (7) interference with contract; (8) interference with prospective economic advantage; (9) aiding and abetting/acting in concert; and (10)

2

racketeering.  Sullivan and the defendants responded with several affirmative defenses[1] and

counterclaimed for attorney fees and breach of contract.  After an eight-day evidentiary hearing

followed by post-arbitration briefs and hearings, Spier issued an Interim Memorandum Decision

("Interim Decision) on March 15, 2010, and a Supplemental Memorandum of Decision

("Supplemental Decision") and an Arbitration Award on July 15, 2010.

In the Interim Decision, Spier found that ARC should recover from Sullivan and the other

respondents one half of the compensation and benefits that they received while competing with

ARC, plus interest.  For Sullivan, the amount was ultimately determined to be $246,589.27.[2]  The

awards were separate, not joint and several.  Spier found that the respondents misappropriated

ARC's trade secrets, the Lotus Notes database and the Master Proposal List.  Interim Decision, p.

3.  Sullivan admits retaining the Master list after leaving ARC.  Respondent's brief, p. 5.  All

claims and defenses (including punitive damages) that were not expressly allowed were deemed to

be overruled.  Interim Decision, p. 4.

Spier found that while the evidence showed that the respondents "actively discouraged

Claimant [ARC] from seeking [the Jambi project] while they were pursuing it for themselves

(while still employed)", ARC failed to show that it would have profited from the Jambi project

and obtained other profitable projects based on the project's success.  Therefore, the arbitrator

found that ARC failed to meet its burden of proof on the lost profit damages, and awarded only a

return of the portion of the respondents' wages.  The arbitrator also found that Brion indicated in

---

[1]The Defendants' affirmative defenses included:  (1) failure to state a claim; (2) waiver-
trade secrets and confidential information; (3) equitable estoppel; (4) waiver-independent
business activities; (5) illegality; (6) not secret/in public domain; (7) independent development.

[2]Arbitration Award, para. 5.

3

an October 22, 2007 email that no one at ARC knew what Higgins, Sullivan and he were doing, and that the group needed to "keep it that way." Interim Decision, p 5. Spier indicates that this desire to keep the respondents' activities secret was joined by Sullivan. He also found that the Master List and the Lotus Notes database were protected information. "It is clear under the evidence that the Master Proposal List (Cl. Ex.177) contains protected information, even though its genesis was a listing that Mr. Sullivan brought with him years before." Interim Decision, p. 6. In his supplemental memorandum, Spier found that ARC met its burden of proof for unauthorized use of trade secrets under ORS 646.461(2)(b) only as to the Lotus Notes database and the Master Proposal List. Supplemental Memorandum, p. 2.

The actual Arbitration Award found that ARC prevailed on its claims for breach of contract (first claim); breach of fiduciary duty/duty of loyalty (second claim); misappropriation of trade secrets (third claim); injunctive relief (fifth claim); unjust enrichment (sixth claim); interference with contract (seventh claim); interference with prospective economic advantage (eighth claim); and aiding and abetting/acting in concert (ninth claim). ARC also prevailed on all of the respondents' affirmative defenses and claims. Sullivan and the other respondents prevailed on ARC's claim under the Computer Fraud and Abuse Act (fourth claim); the racketeering claim (tenth claim); and ARC's request for punitive damages. The monetary relief was awarded under ARC's claims for Breach of Contract (First Claim), Breach of Fiduciary Duty/Duty of Loyalty (Second Claim), Misappropriation of Trade Secrets (Third Claim), Unjust Enrichment (Sixth Claim), Interference with Contract (Seventh Claim), and Interference with Prospective Economic Advantage (Eight Claim). Arbitration award, para. 5. The respondents were also ordered to return or destroy all original and copies in their possession of the Lotus Notes database and the

4

Master Proposal List.

The District Court entered a judgment confirming the arbitration award on August 11, 2010. Sullivan filed the present chapter 7 proceeding on September 22, 2010. Sullivan and the other respondents filed a petition to vacate or correct the arbitration award on October 7, 2010, and a motion for relief from judgment on October 19, 2010 in the District Court. This Court lifted the automatic stay to allow ARC to participate in the Oregon District Court proceeding by its orders of October 29, 2010 and November 9, 2010.

## CONCLUSIONS OF LAW

ARC filed this adversary proceeding seeking to have the Oregon District Court judgment declared nondischargeable under 11 U.S.C. §523(a)(4) and (a)(6). The complaint also seeks a declaratory judgment regarding the effect of Sullivan's bankruptcy discharge on the injunction imposed by the District Court order; however, ARC noted in its brief that Sullivan stipulated in his response brief that the injunction is not a claim that may be discharged in bankruptcy. Defendant's Response Brief to Plaintiff's Summary Judgment, p. 24. Both parties rely on the collateral estoppel effect of the arbitration proceeding and the District Court judgment as the basis for their respective motions for summary judgment. The doctrine of collateral estoppel does apply in discharge exception actions under §523(a)[3] if the parties can show that: (1) the issue in the previous action and the present action is identical; (2) the issue was actually litigated in the prior action; (3) resolution of the issues was critical and necessary to the earlier judgment. The burden of proof in the prior action must be at least by a preponderance of the evidence, as required for

---

[3]*Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

Case 10-00094    Doc 55    Filed 05/20/11    Entered 05/20/11 15:34:53    Desc Main
Case 10-03291-rld    Doc 49    Filed 06/22/11
Document    Page 5 of 10

§523(a) dischargeability actions. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).[4]

Under 11 U.S.C. §523(a)(4), a debtor cannot discharge a debt incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." ARC maintains that Sullivan's actions amount to embezzlement under this section. The Ninth Circuit defines "embezzlement" under §523(a)(4) as:

> 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.' *Moore v. United States*, 160 U.S. 268, 269 (1885). Embezzlement, thus, requires three elements: '(1) property rightfully in the possession of the nonowner; (2) nonowner's appropriation of the property to a use other than which [it] was entrusted; and (3) circumstances indicating fraud.'

*In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991) (citations omitted).

The arbitrator's interim and supplemental decisions found that Sullivan and the other respondents misappropriated the Lotus Notes database and the Master Proposal List. Sullivan had the Master Proposal List for use during his employment with ARC. The arbitrator found that the Master Proposal list contained protected information, and that Sullivan misappropriated it for use in his own business, SHB. In his reply to the Plaintiff's response brief, Sullivan's counsel admits that "the arbitrator did find that the defendants used the plaintiff's Lotus Notes database and Master Proposal List without authorization. However, his conclusory finding was contrary to the evidence which showed that the defendants did not use this material for their own purposes." Defendant's reply to Plaintiff's response brief, p. 5, n.1. Even though Sullivan disagrees with the

---

[4]In its brief in support of its motion for summary judgment, p. 7, ARC acknowledges that it had the same preponderance of the evidence standard in both the arbitration proceeding and this adversary. Sullivan acknowledges the preponderance standard in his response to the summary judgment, p. 8, and relies on issue preclusion in support of his motion for summary judgment. The parties appear to agree that the preponderance of the evidence standard was the same for the arbitration proceeding and the present adversary proceeding.

6

arbitrator's ultimate findings, the arbitrator heard the evidence regarding Sullivan's use of the

Master Proposal List, and found in favor of ARC that Sullivan misappropriated the list. Thus,

ARC has established the first two elements of embezzlement under §523(a)(4).

Sullivan maintains that ARC cannot rely on the arbitrator's decision for proof of the final

element of embezzlement, "circumstances indicating fraud", because fraud was not an element in

any of the plaintiff's claims, and therefore was not presented to the arbitrator, and was not a

necessary and critical part of the arbitration award. The arbitration award granted relief to ARC

on its third claim for Misappropriation of Trade Secrets under ORS 646.461. Under the Oregon

Statute 646.461(2)(a), "misappropriation" means: (a) Acquisition of a trade secret of another by a

person who knows or has reason to know that the trade secret was acquired by improper means."

In turn, the statute defines "improper means" as "theft, bribery, <u>misrepresentation</u>, breach or

inducement of a breach of a duty to maintain secrecy or espionage through electronic or other

means." ORS 646.461(1) (emphasis added). The Oregon Statute put the issue of

misrepresentation before the arbitrator, and the issue was necessary and critical to the arbitrator's

findings in the interim and supplemental decisions. The arbitrator found it "telling that Mr.

Sullivan discouraged Mr. Garton (Respondents' ultimate superior within the company division)

from pursuing the Jambi park boiler opportunity, while Respondents' actively and secretly sought

this business." Interim decision, p. 4. Further, in an October 22, 2007 email, Sullivan's business

partner Brion stated "Nobody at [Claimant] has any idea what we are doing and we need to keep it

that way." Interim decision, p. 5. In determining circumstances of fraud under §523(a)(4),

"[i]ntent may properly be inferred from the totality of the circumstances and the conduct of the

person accused." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (citing *Kaye v. Rose (In re*

*Rose)*, 934 F.2d 901, 904 (7th Cir. 1991). The arbitrator's decision to grant relief to ARC under

the misappropriation of trade secrets claim indicates that he did find misrepresentations by

Sullivan and the other respondents. Those same facts lead this Court to conclude that Sullivan

appropriated the Lotus Notes database and the Master Proposal List[5] under circumstances of

fraud. Therefore, the Court finds that ARC has established the elements for embezzlement under

§523(a)(4).

    Sullivan asserts in his cross motion for summary judgment and in opposition to ARC's

motion for summary judgment that ARC's claims under §523(a)(4) and (a)(6) fail due to the

arbitrator's findings that ARC did not prove damages related to lost profits or business

opportunity related to the Jambi project. Sullivan maintains that the monetary award is not related

to any harm suffered due to the misappropriation of trade secrets or interference with a corporate

opportunity. Looking to the interim decision, it is apparent that Spier found that the evidence

showed that Sullivan and the respondents were competing with their employer for business

opportunities, taking care to keep their actions secret, and misappropriating protected

information. He first noted that the respondents did not "dispute that they would have been

obligated to present a bark boiler opportunity for a North America customer [to ARC]. However,

to justify their secret effort to obtain the Jambi opportunity in Indonesia for themselves, while still

working for [ARC], cuts too fine a distinction." Interim decision, p. 4. Spier continues that it was

"telling" that Sullivan discouraged his supervisor from pursuing the Jambi project while going

after the business himself. Having observed Sullivan's demeanor at the hearing, Spier believed

---

[5]The parties raised the issue of whether the Jambi project as a corporate opportunity was a
property right protected under §523(a)(4). Having based its findings on the misappropriation of
the Lotus Notes database and the Master Proposal List, the Court makes no finding on this issue.

that Sullivan would have been "persuasive and effective" in discouraging ARC from pursuing the project even though his own company was trying to get the project. Interim decision, p. 4. Spier concluded that it was likely that ARC would have pursued the Jambi project if Sullivan had recommended it, and that it was likely that ARC would have gotten the project based on SHB's success. Interim decision, p. 4. The problem lay with proof that the project would have earned a profit and led to other profitable projects; the arbitrator found that ARC failed to provide evidence on these points. This finding does not mean that there was no damage, because the arbitrator ultimately ruled for ARC on the misappropriation claim. Rather, he chose to measure ARC's damages by the respondents' salaries during the period that they were competing with ARC. Interim decision, p. 4. Paragraph 5 of the Arbitration Award makes it clear that the monetary relief is awarded under ARC's claims for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, unjust enrichment, interference with contract and interference with prospective economic advantage. See *In re Janssens*, ___ B.R. ___, 2010WL6501984 (Bankr. D. Md.), aff'd and remanded on other grounds *In re Janssens*, 2011WL 1642575 (D. Md.) (bankruptcy court measured employer's damages by employee's salary when employer failed to prove lost profit in an adversary to determine a debt nondischargeable under §523(a)(4) for breach of fiduciary duty and embezzlement). As a result, the Court does not accept Sullivan's argument that ARC failed to prove damages related the misappropriation claim.

Based on the foregoing, the Court finds that ARC's motion for summary judgment as to dischargeability under §523(a)(4) is due to be granted on the basis of collateral estoppel, and having found that ARC's debt is nondischargeable under §523(a)(4), its claim for nondischargeability under §523(a)(6) is moot. As stated above, Sullivan stipulated in his response

9

brief that the injunction is not a claim that may be discharged in bankruptcy.  Sullivan's motion for summary judgment is due to be denied.  It is hereby

ORDERED that the Plaintiff, Clyde Bergeman, Inc. d/b/a Anthony-Ross Company, motion for summary judgment is GRANTED pursuant to 11 U.S.C. §523(a)(4), and a separate judgment shall be entered in the amount of  TWO HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED EIGHTY-NINE AND 27/100 ($246,589.27) DOLLARS in favor of the Plaintiff and against the Defendant, Eugene Sullivan; and it is further

ORDERED that the injunction in the District Court order is not a claim that may be discharged in bankruptcy; and it is further

ORDERED that Eugene Sullivan's motion for summary judgment is DENIED.

Dated:   May 20, 2011

WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE

10